**UNITED STATES of America**

v.

**Joseph E. MARSHALL, Appellant.**

**No. 74–1694.**

United States Court of Appeals, District of Columbia Circuit.

Feb. 12, 1975.

Robert M. Hausman, Washington, D. C. (appointed by this court), for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin, Richard L. Cys and Michael I. Gewirtz, Asst. U. S. Attys., were on the brief for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and VAN PELT,* United States Senior District Judge for the District of Nebraska.

PER CURIAM:

For offenses allegedly committed during the early morning hours of Saturday, June 21, 1969, appellant on March 19, 1971, was found guilty of first degree murder (D.C. Code § 22–2401), assault with intent to kill while armed (D.C. Code §§ 22–501, 22–3202), assault with intent to kill (D.C. Code § 22–501), armed robbery (D.C. Code §§ 22–2901, 22–3202), robbery (D.C. Code § 22–2901), sodomy (D.C. Code § 22–3502), and

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

carrying a dangerous weapon (D.C. Code § 22–3204). He was sentenced on all but the lesser included offenses.

During the trial the court ruled that, in the event appellant testified, the Government would be permitted to introduce two prior convictions for impeachment purposes as authorized by D.C. Code § 14–305. In so ruling the court did not consider the factors previously required to be considered under Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). As a result, appellant declined to testify in his own behalf. His appeal to this court was joined with the appeals of three other defendants and was heard *en banc.* United States v. Henson, 159 U.S.App. D.C. 32, 486 F.2d 1292 (1973). We held that D.C. Code § 14–305, which was enacted on July 29, 1970, to become effective February 1, 1971, and which provided for the admission into evidence of prior convictions for purposes of impeachment, operated as an *ex post facto* law in this case because between the dates of the offenses and the trial, the statute had changed the decisional law in this circuit as first set forth in *Luck* and the District Court had applied the amended statute in the trial of the case. We accordingly remanded the case to the District Court to apply the law existing at the time of the offense, *i. e.,* to consider whether impeachment by such prior convictions should have been permitted under *Luck.* If the District Court found that such impeachment was improper, it was directed to grant a new trial unless it also found the error to be harmless. 159 U.S.App.D.C. at 48–49, 486 F.2d at 1308–09.

On remand, the District Court held a hearing, took testimony, heard argument and ruled that the two prior convictions in question were admissible under the *Luck* standard because the prejudicial impact did not far outweigh their probative value on the issue of credibility (R. 40–44).[1] It held that the two convictions were not too remote in time to have lost significance in assessing appellant's testimony and were relevant and material as to appellant's honesty and integrity,[2] that the prior convictions were not sufficiently similar to the offenses charged to be improperly prejudicial,[3] and that appellant had been able at trial to present his defense adequately through testimony from other witnesses. It is this last holding that is principally attacked on this appeal.[4]

We conclude that the evidence which appellant desired to introduce by his own testimony came in adequately through other witnesses. Appellant had a double defense: (1) alibi and (2) that he had purchased the murder weapon from a third person *after* the murder was committed.

His alibi defense was a claim that he was home sleeping in his bed when the offenses were committed. Obviously he would have been a competent witness on this point, but his testimony would have been weakened by his obvious self-interest. At trial, the evidence relating to this defense was introduced in stronger

---

1. R. indicates Remand transcript.

2. (R. 44). Appellant had three prior convictions: (1) A 1965 conviction in the District of Columbia for assault with intent to commit grand larceny. Appellant was released from jail on this sentence "in late 1968" (R. 34). (2) A 1965 conviction in Maryland for a misdemeanor involving the unlawful use of a motor vehicle for which appellant received a three months' sentence. (3) A 1970 conviction in New York for armed robbery (R. 33). The Government never intended to use the Maryland misdemeanor conviction.

3. On remand appellant argued that the prior convictions involved the same sort of overall conduct as the instant crimes (R. 35). However, the court held, and we think correctly so, that the main crime charged here and the "main issue at the trial" (R. 42) was first degree murder and that "the armed robbery, robbery, CDW, etc., charges were quite subsidiary to murder in the first degree and the charge of assault with intent to kill while armed" (R. 42). The U. S. Attorney correctly pointed out that the offenses here "had obvious sexual overtones, and sexual involvement [sodomy]. Neither of the prior offenses did" (R. 35).

4. We decide this case without argument under Court Rule 11(e) since we find the record sufficient to form the basis for our opinion.

fashion through his brother, Jerry Marshall (Tr. 787–91, 813–14).

Appellant's other defense was his claim that he had purchased the murder weapon from a third person at a time subsequent to the murder and the other crimes charged. This point is of extreme significance because it is admitted that the gun which was found on appellant's person on Sunday when he was arrested was the same gun that had been used to commit the charged murder of one victim and the armed assault of another early in the morning of the preceding day. At trial, Elbert Williams, a friend of appellant's, testified that he was with appellant when he purchased the gun (Tr. 670–71) at about three o'clock in the morning (Tr. 668), the day before Marshall was arrested (Tr. 660, 666, 667–668). The arrest occurred on Sunday night, June 22nd (Tr. 760–61). This was well after the crimes which were committed in the early morning hours of Saturday, June 21st.

It is thus incorrect to assert, as appellant does (Appellant's Br., p. 6), that nobody else was available to tell his story. As to both defense claims, other witnesses (i. e., his brother Jerry and Elbert Williams) were not only available, they actually testified. Appellant's parents might also have been called to corroborate some of the alibi points.

In addition, Elbert Williams testified that appellant had purchased the gun from one "Chick" (Tr. 674, 682, 708) who *knew* Marshall (Tr. 669, 707) and who was a "friend" of his (Marshall) (Tr. 674, 704). Appellant characterized this as his main defense (Tr. 664). While the phantom "Chick" might not have been willing to testify, and presumably he would not if he actually possessed the gun at the critical times, from the testimony of Williams one would conclude that it was apparently within the capability of appellant to identify "Chick" and aid in producing him to the police. That action would have helped his case even more than his own testimony or Williams' testimony because the possessor of the gun at the time of the offenses was the obvious offender. But "Chick" was not produced and appellant's counsel never argued the existence of "Chick" to the jury. Since proof of possession of the gun at the time of the crimes was so vital to appellant, it is incredible to believe that if "Chick" actually existed, appellant would not have claimed to the jury that he went to great lengths to produce him and thereby to attempt to prove a fact which, in effect, would have established his innocence.

■ Appellant also argues that he (appellant) would have made a better witness than Williams. That may be, but the point is speculative and we are unable to agree with appellant's subsidiary contention that when Williams' testimony is examined closely, it fails to support appellant's claim that he bought the gun from "Chick" *after* the crimes and before he was arrested. See Transcript references cited above. It is true that the lawyers had difficulty in extracting such direct evidence from Williams, but this was as much their fault as the witness'. He fixed the exact time of the purchase by reference to the time when appellant was arrested (Sunday) and to his recollection that he had been with appellant the day before (Saturday P.M. and Sunday A.M.) at which time, according to his testimony, Marshall had bought the gun. Supporting a defense by such indirect testimony is many times more persuasive with a jury than having the defendant state in categorical terms that he bought the gun at such and such a time. We see no substantial prejudice to appellant's case in the manner in which he contends he was compelled to present his defense evidence. We accordingly conclude that appellant's own testimony on these points was not necessary to his defense. Gass v. United States, 135 U.S.App.D.C. 11, 18, 416 F.2d 767, 774 (1969); Brooke v. United States, 128 U.S.App.D.C. 19, 25–26, 385 F.2d 279, 285–86 (1967).

■ Appellant also contends that his motion for a new trial on the basis of alleged newly discovered evidence was

improperly denied. We disagree. The claim he makes on this motion is that the Government failed to disclose that the witness who survived the five bullets that he shot into her body was improperly shown a picture of appellant shortly before her in-court identification of him. However, this was the *same picture* that the victim had previously selected when appellant was initially identified by her.

While the victim was in the hospital, she was shown three different sets of pictures (30 in number) in an attempt to see if she could identify her assailant. Appellant's picture was not among them, and she did not select any of the pictures then shown her. After she was released from the hospital, she selected appellant's picture from another group of nine photographs which were presented to her at her home. Under such circumstances there was nothing improper in showing the picture she had selected to her before her appearance as a witness at the trial, and the fact that this did not come out at the *Clemons*[5] hearing is not grounds for a new trial. It is customary to show a witness the picture in such a situation to refresh her recollection. This case is clearly distinguishable on the facts from United States v. Gambrill, 146 U.S.App.D.C. 72, 449 F.2d 1148 (1971), where we reversed for the improper showing of two photographs prior to trial. In that case the victim had not previously identified the defendant, and shortly before trial she was shown two pictures of him with the accompanying statement that he was the defendant.

This motion was first filed in this court on April 18, 1972, and was then denied. It was revived in the latter stages of the remand we are presently considering and then denied by the District Court. For the reasons stated above we agree with the decision of the District Court denying the motion a second time and affirm the judgment of conviction.

Judgment accordingly.

5. Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (1968), cert. denied, 394

U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969).