**S.D. EDMONDS, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, Defendant.**

**No. CIV.A.02–1294(ESH).**

United States District Court, District of Columbia.

July 23, 2003.

Stephen Martin Kohn, David Keith Co-lapinto, Kohn, Kohn & Colapinto, P.C., Washington, DC, for Plaintiff.

John R. Griffiths, U.S. Department of Justice, Vesper Mei, Pamela D. Huff, U.S. Department of Justice, Civil Division, Washington, DC, for Defendant.

### MEMORANDUM OPINION

HUVELLE, District Judge.

This action was filed pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Plaintiff Sibel Edmonds seeks documents from the Federal Bureau of Investigation ("FBI") relating to her FBI employment, including her personnel file, her allegations of wrongdoing at the FBI, investigations related to her whistle-blower allegations, her security clearance, and the investigation and/or adjudication of her security clearance. Defendant released 343 of 1,486 pages of responsive material and has filed a motion for summary judgment arguing that it has released all nonexempt information after a thorough search. Plaintiff challenges all withholdings and opposes the granting of summary judgment. Upon review of the pleadings, the entire record, and the relevant law, the Court grants defendant's motion except as to defendant's invocation of Exemption 5 and its claim of Exemption 2 as to a limited number of documents. With respect to these two issues, defendant must provide additional information to support its withholdings.

### BACKGROUND

Plaintiff is a whistleblower who worked as a contract linguist for the FBI after the September 11, 2001 terrorist attacks. Between December 2001 and March 2002, plaintiff made numerous reports to FBI management about "serious problems, misconduct, security lapses, a breakdown in quality, and gross incompetence in the translation unit" where she worked. (Plaintiff's Opposition to Defendant's Motion for Summary Judgment ["Pl.'s Opp."] at 3.) In early March 2002, plaintiff reported her concerns to the FBI Office of Professional Responsibility ("OPR") and the Office of Inspector General ("OIG") at the Department of Justice ("DOJ"). (*Id.* at 3–4.) Later that month her employment contract was terminated. (*Id.* at 4.) In addition to this FOIA action, plaintiff filed a separate complaint contesting her termination and alleging violations of the Privacy Act, the Administrative Procedures Act, and the First and Fifth Amendments of the United States Constitution.[1] Her allegations have received substantial media and congressional attention. (*See* Pl.'s Exs. 4, 5, 7–15, 18.)

By letter dated April 19, 2002, plaintiff requested documents relating to herself, her allegations of wrongdoing at the FBI, and investigations of persons related to her. Plaintiff made a second FOIA request on April 29, 2002, seeking information pertaining to her security clearance and the purported investigation and/or adjudication thereof. Her requests were denied the following month. (Am.Compl.¶ 9.) Plaintiff's administrative appeals were also denied. (*Id.* ¶¶ 10–14.) In June 2002, after exhausting her administrative remedies, plaintiff filed this action alleging that she has been denied access to agency records responsive to her FOIA requests and demanding production of such documents. (*Id.* ¶¶ 16–18.) This Court granted her claim for expedited processing of the requests, *see Edmonds v. FBI*, Civ. No. 02–1294, Order (Dec. 3, 2002), and following a December 13, 2002 status hearing, ordered

---

**1.** The employment case, *Edmonds v. United States Department of Justice*, Civ. No. 02– 1448, is pending before the Honorable Reggie B. Walton.

defendant to produce all non-exempt documents, provide a *Vaughn* index describing the withheld documents, and file its motion for summary judgment. *Edmonds v. FBI*, Civ. No. 02–1294, Order (Dec. 13, 2002). At that time, the Court also ordered plaintiff to provide defendant with a list of uncontested withheld documents. *Id.*

By letter dated February 10, 2003, defendant released 343 pages of the 1,486 pages of responsive material. Withholdings were made pursuant to FOIA Exemptions 1, 2, 5, 6, 7(A), 7(C), 7(D), and 7(E) and Privacy Act Exemptions (j)(2), (k)(1), and (k)(2). To support its withholdings, defendant submitted the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at FBI Headquarters (the "Hardy Declaration"). In addition, along with the 343 pages released to plaintiff, defendant inserted Deleted Page Information Sheets ("DPIS's") to show where deleted or duplicated pages were withheld in their entirety and the basis for the various withholdings.

The responsive documents and DPIS's are numbered consecutively beginning with Edmonds–1 and ending with Edmonds–1486. Whenever an exemption is invoked to redact information in a document, that exemption is noted in the margin of the page. The only exception to this practice is that in each case where Exemption 1 is claimed, Exemption 5 is also claimed but may not be marked on the document. (Hardy Dec. ¶ 11.) Some of the withholdings are further segregated into coded subcategories. (*Id.* ¶ 12.) Defendant has also presented for *ex parte* and *in camera* review an eighteen-page supplement to the Hardy Declaration and a detailed *Vaughn* index of 225 pages to further explain its withholdings pursuant to Exemptions 1 and 7(D). (*Id.* ¶ 4.)

Plaintiff has not provided a list of uncontested withholdings, arguing that she cannot do so without a list or index of documents. (Pl.'s Opp. at 3.) Rather, on March 5, 2003, plaintiff's counsel advised defendant that plaintiff wished to challenge all of the withholdings. (*See* Defendant Federal Bureau of Investigation's Motion for Summary Judgment ["Def.'s Mot."] Ex. 4). Thereafter, defendant filed the instant motion arguing that the declarations, coded material and classified index demonstrate that its withholdings are proper and that plaintiff's FOIA complaint should be dismissed.

## ANALYSIS

### I. FOIA: General Principles and Standard of Review

■■■■ Under FOIA, an agency must disclose all records requested by "any person," 5 U.S.C. § 552(a)(3), unless the agency can establish that information falls within one of the nine exemptions set forth in the statute. *See* 5 U.S.C. § 552(b). These exemptions are exclusive, and should be narrowly construed. *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). However, the Supreme Court has noted that the exemptions must be construed "to have a meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). An agency that withholds information pursuant to one of these exemptions bears the burden of justifying its decision. *King v. United States Dep't of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987).

■■■■ In reviewing an agency's invocation of an exemption, the Court must consider that in enacting FOIA, Congress aimed to strike a balance "between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information

private, whether to protect particular individuals or the national interest as a whole." *ACLU v. United States Dep't of Justice,* 265 F.Supp.2d 20, 27 (D.D.C.2003) (citing *John Doe Agency,* 493 U.S. at 152–53, 110 S.Ct. 471). Challenges to an agency's decision to withhold information are reviewed *de novo. King,* 830 F.2d at 217. *See also* 5 U.S.C. § 552(a)(4)(B).

 Summary judgment can be granted to the government in a FOIA case if "the agency proves that it has fully discharged its obligation under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Greenberg v. Dep't of Treasury,* 10 F.Supp.2d 3, 11 (D.D.C. 1998). The government must prove that "each document that falls within the class [of documents] requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978) (internal citation and quotation omitted). The Court may award summary judgment solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir. 1981); *see also Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973); *King,* 830 F.2d at 217; *ACLU,* at 27 ("Summary judgment may be granted based on an agency's affidavits if they contain 'reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.' ") (citation omitted). Thus, summary judgment may be granted based on

an agency's affidavit if it "enables the court to make a reasoned independent assessment of the claim[s] of exemption." *Jones v. FBI,* 41 F.3d 238, 242 (6th Cir. 1994) (citation omitted).

## II. Adequacy of the Affidavit

 Plaintiff argues that defendant has failed to meet its burden on summary judgment because of its failure to produce "an itemized public index that describes each record or withheld portion and gives a detailed explanation of the agency's grounds for withholding, correlating each exemption claimed with the particular record or portion to which it supposedly applies." (Pl.'s Opp. at 6.) However, "it is the function, not the form, of the index that is important" and the same end can be achieved through the submission of an affidavit and annotated documents. *Keys v. United States Dep't of Justice,* 830 F.2d 337, 349 (D.C.Cir.1987) (holding that declarations in conjunction with coded withholdings accomplish the purpose of a *Vaughn* index).

 Affidavits submitted by a government agency to justify FOIA exemption claims must "strive to correct . . . the asymmetrical distribution of knowledge that characterizes FOIA litigation" to enable the district court " 'to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves.' " *King,* 830 F.2d at 218 (quoting *Dellums v. Powell,* 642 F.2d 1351, 1360 (D.C.Cir.1980)). Affidavits achieve this purpose when they provide "reasonably specific detail" to demonstrate that the withheld information falls within the claimed exemption. *Military Audit Project,* 656 F.2d at 738.

As discussed below with respect to most of the claimed exemptions, the Court can make an informed decision as to whether the withheld material must be produced

based on the public and classified affidavits, the coded documents, and the classified index. Specifically, the classified declaration and index enable the Court to fulfill its duty of ruling on the Exemptions 1 and 7(D) withholdings. Moreover, the public affidavit and the coded documents provide sufficient detail with respect to most of the remaining material withheld under other exemptions. In particular, the public affidavit and the coded documents provide an "adequate foundation" for the Court to affirm the soundness of withholdings under Exemptions 6, 7(C), and 7(A). *King*, 830 F.2d at 218. These documents also support defendant's claims pursuant to Exemption 2 on the pages marked Edmonds–823 and 1359 and pursuant to Exemption 7(E) on the pages marked Edmonds–1329, 1330–1346, 1361–1368. Thus, with limited exception,[2] the Court has been provided with an adequate basis to rule on virtually all of defendant's withholdings.

## III. Exemption 1

■ Exemption 1 protects from mandatory disclosure under FOIA matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Information must be classified in accordance with the procedural and substantive requirements of the governing executive order in order to be withheld under Exemption 1. *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 483 (D.C.Cir.1980). Here, classification is governed by Executive Order 12958.

According to defendant, the material withheld pursuant to Exemption 1 meets the substantive requirements of the Exec-

utive Order because it consists of "intelligence sources or methods," E.O. 12958 § 1.5(c), and "reasonably could be expected to result in damage to the national security." E.O. 12958 § 1.2. (Def.'s Mem. at 9.) "Substantive review of classification decisions is quite deferential." *Washington Post v. United States Dep't of Defense*, 766 F.Supp. 1, 6 (D.D.C.1991). The Court is to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Military Audit Project*, 656 F.2d at 738 (citation omitted). *See also Salisbury v. United States of America*, 690 F.2d 966, 970 (D.C.Cir.1982). This is especially true "in a national security case, in which the agency possesses necessary expertise to assess the risks of disclosure," *Schlesinger v. CIA*, 591 F.Supp. 60, 67 (D.D.C.1984), and judges "lack the necessary expertise to second guess ... agency opinion." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C.Cir.1980). For, as recently recognized by this Circuit:

> [T]he Supreme Court and this Court have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security.... Moreover,... we have consistently deferred to executive affidavits predicting harm to the national security and have found it unwise to undertake searching judicial review.... *Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C.Cir.1982) ("Once satisfied that proper procedures have been followed and that the information logically falls into the exemption claimed, the courts need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith.")

---

2. The Court is requesting additional information in the few instances where the public declaration and coded material are inade-

quate to assess the claim under Exemption 5 and with respect to three pages withheld under Exemption 2. *See infra* Sections IV and V.

*Ctr. for Nat'l Security Studies v. United States Dep't of Justice*, 331 F.3d 918, 927 (D.C.Cir.2003). Thus, in the absence of contradictory evidence, this Circuit has required "little more than a showing that the agency's rational is logical" to uphold an agency's classification decision. *Washington Post*, 766 F.Supp. at 7.

Despite the deference owed to the executive in the FOIA context when national security concerns are implicated, plaintiff argues that the Hardy Declaration is not sufficiently specific to justify granting summary judgment because it does not contain adequate descriptions of the withheld information or adequate justifications for the claimed exemptions. (Pl.'s Opp. at 3.) As explained by the Hardy Declaration, however, "public disclosure of the information contained in the classified and withheld portions of the[ ] documents [responsive to plaintiff's request] would reveal information about an intelligence activity, source or method and would have a negative impact on the FBI's ability to effectively collect intelligence information and would seriously damage the national security interests of the United States." (Hardy Decl. ¶ 18.) Moreover, though defendant "is unable in its public declaration to provide complete descriptions of the documents, or detailed explanations justifying withholdings, without revealing the very information it seeks to protect," (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ["Def.'s Mem."] at 3–4), it has provided to the Court *ex parte* and *in camera* extensive classified documents to support its Exemption 1 claims, including the eighteen-page Supplemental Classified Declaration of David M. Hardy (the "classified declaration") and a 225–page document-by-document *Vaughn* index identifying the specific information withheld pursuant to Exemption 1.[3] The classified declaration also provides additional details regarding confidential source information withheld under Exemption 7(D). (Def.'s Mem. at 3–4.)[4]

After reviewing the extensive confidential material submitted by defendant, the Court agrees that this is one of those "occasion[s] when extensive public justification would threaten to reveal the very information for which a FOIA exemp-

---

**3.** Defendant also submitted the *Ex Parte, In Camera* Declarations of Attorney General John Ashcroft and Deputy FBI Director Bruce Gebhardt, which explain more fully the grounds for the Attorney General's assertion of the state secrets privilege (*see* Def.'s Mem. at 18) and provide further background information for defendant's claims under Exemption 1.

**4.** Courts are permitted to review classified affidavits *ex parte* and in *camera* in national security cases. *Lykins v. United States*, 725 F.2d 1455 (D.C.Cir.1984) (citing *Hayden v. NSA*, 608 F.2d 1381, 1384 (D.C.Cir.1979)). *Cf. Holy Land Foundation for Relief and Development v. Ashcroft*, 333 F.3d 156, 163–64 (D.C.Cir.2003). Moreover, this is not a case in which the government has made no public record of its reasons for claiming the exemption as was the situation in the case cited by plaintiff—*Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1012 (D.C.Cir.1976). There, defendant's affidavit stated only that the agency could "neither confirm nor deny" the existence of the requested documents, *id.* at 1013, whereas here defendant has submitted two public declarations that describe the processing of plaintiff's FOIA request, the decision to classify portions of the requested documents, and the justification for Exemption 1 withholding. The Court gives "substantial weight," *Hayden*, 608 F.2d at 1384, to defendant's assertions that it has "made every effort to ensure that as much information as possible is disclosed" (Hardy Decl. ¶ 4), and has thus exercised its discretion to accept the classified affidavits *in camera* and *ex parte*. *See Hayden*, 608 F.2d at 1384 (finding that it is within the court's discretion to accept classified affidavits *in camera* where defendant has created "as full a public record as possible").

tion is claimed." *Lykins,* 725 F.2d at 1463. The confidential index "describe[s] the withheld information and the justification for withholding [pursuant to Exemption 1] with reasonable specificity." *Fitzgibbon v. United States Secret Serv.,* 747 F.Supp. 51, 55 (D.D.C.1990). As required by this Circuit, it

(1) identif[ies] the document, by type and location in the body of documents requested; (2) note[s] that Exemption 1 is claimed; (3) describe[s] the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain[s] how this material falls within one or more of the categories of classified information authorized by the governing executive order; and (5) explain[s] how disclosure of the material in question would cause the requisite degree of harm to the national security.

*King,* 830 F.2d at 224. The Court's review also confirms that disclosure of the classified information withheld "reasonably could be expected to cause serious damage to the national security." (Defendant's Reply in Support of Motion for Summary Judgment ["Def.'s Reply"] at 6.) Further, defendant's submissions substantiate its position that some information required classification because it was intertwined with the sensitive matters at the heart of the case and could not be further segregated and that other categories of information were withheld because, in view of the information relevant to this matter that is already in the public arena, they would tend to reveal matters of national security even though the sensitivity of the information may not be readily apparent in isolation. (*See id.*) This explanation comports with the Supreme Court's recognition that "[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *CIA v. Sims,* 471 U.S. 159, 178, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985) (citations omitted). *See also Ctr. for Nat'l Security Studies,* 331 F.3d at 924 (discussing mosaic arguments in context of national security).

■ Plaintiff's specific challenges to the invocation of Exemption 1 are similarly unconvincing. First, plaintiff complains that defendant has over-classified certain documents. The classified declaration, however, satisfactorily explains why it is now proper to classify many work-related documents pertaining to plaintiff's employment (*e.g.,* plaintiff's invoices for contract services as a linguist, her personnel file, letters and e-mails written by FBI agents praising her work performance, and documents concerning her whistleblower allegations), which may not have been classified when plaintiff was employed at the FBI, but must now be treated as classified given the public disclosures surrounding plaintiff's allegations.[5] For, as recognized by this Circuit, information can be classified if, when aggregated and discussed in the context of the responsive documents, it reveals other underlying facts, associations or relationships that are classified. *See Halperin,* 629 F.2d at 150 ("each individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in

---

**5.** As an example, plaintiff points to a Computer Custody Log Sheet (*see* Edmonds–436) documenting the chain of custody of a computer belonging to plaintiff's husband while it was in the FBI's possession. (Pl.'s Opp. at 11.) The FBI gave Mr. Edmonds a completed copy of the document which contained the names of three FBI Special Agents. These names, however, were subsequently classified and redacted from the document on national security grounds. (*Id.*) Defendant's reasoning for withholding the names is adequately addressed in the classified declaration, and based on this explanation, the Court is satisfied that the names are properly withheld.

piecing together other bits of information even when the individual piece is not of obvious importance in itself"). *See also Goldberg v. Dep't of State*, 818 F.2d 71, 77, 81 (D.C.Cir.1987) (classification and withholding of documents initially marked "unclassified" is proper).

Second, plaintiff argues that defendant has not complied with some of the Executive Order's procedural requirements. The evidence before the Court proves otherwise. The public and classified Hardy Declarations amply demonstrate that defendant has complied with the procedural strictures of Executive Order 12958 with respect to the documents withheld under Exemption 1, including the eight documents specifically identified by plaintiff. (*See* Pl.'s Ex. 1, Affidavit of Emanuel Johnson, Jr. ["Johnson Aff."] ¶¶ 28, 29.) Defendant has cured any procedural deficiency by correcting the markings on the pages marked Edmonds–907, 908, 909, 920, and 921 so that they satisfy the procedural requirements of Executive Order.[6] (*See* Def.'s Reply Ex. 1.) *See also Washington Post*, 766 F.Supp. at 7–8 (government conceded that many documents were not properly marked under the governing executive order and agreed to make corrections).[7]

Third, the major thrust of plaintiff's attack on defendant's Exemption 1 claim is premised on her argument that information is being withheld that is already in the public domain through disclosures to the news media and FBI briefings to Congress. Plaintiff's position is riddled with problems. First, "the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods, and operations." *Fitzgibbon*, 911 F.2d at 766. *See also Public Citizen Inc. v. Dep't of State*, 100 F.Supp.2d 10, 24 (D.D.C.2000), *rev'd in part on other grounds*, 276 F.3d 634 (D.C.Cir.2002) (to defeat claim of exemption based on public disclosure, disclosure must be widespread and come from an official source, be as specific as information earlier released, be identical to the released information, and must have occurred through official document disclosure); *Washington Post*, 766 F.Supp. at 9–10 (information in the public domain may be withheld where withheld information is more detailed and release of that information poses a threat to national security; even if the information is exactly the same, it may be withheld if revealing the context in which the information is discussed would itself disclose additional information that would be harmful to national security; or if release of the withheld information would amount of official confirmation or acknowledgment of its accuracy); *Ctr. for Nat'l Security Studies*, 331 F.3d at 930–31 ("The disclosure of a few pieces of information in no way lessens the government's

---

6. As originally submitted, these pages were not stamped with the name of the classifying authority, the reasons for classification, and the date for declassification as required by the Executive Order. As noted, this deficiency has been remedied. Secondly, with respect to plaintiff's challenge to Edmonds–421, 422, and 431, the Executive Order requires only that the first pages of documents contain these markings, and as explained by defendant (*see* Def.'s Reply at 11 n. 2), these three documents are not the first pages of documents and thus need not be stamped.

7. Plaintiff also argues that the documents marked Edmonds–5, 442, and 708 are not properly classified because they are stamped "ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED EXCEPT WHERE SHOWN OTHERWISE." (Johnson Aff. ¶ 29.) Such markings do not indicate that the material is improperly withheld. The marking clearly indicates that information *is* classified "where shown otherwise." Thus, the redactions in the three cited documents necessarily reflect defendant's determination that the particular deleted information is being withheld under Exemption 1.

argument that complete disclosure would provide a composite picture of its investigation and have negative effects on the investigation.").

■ As is apparent from a comparison of the information contained in the documents withheld under Exemption 1, as explicated by the classified declaration, with the quoted statements in the media which have been attributed to the government, the information that is being withheld is not identical to the information in the public domain. Rather, the withheld information is far more detailed and its release could provide a composite picture, or at least additional information, that would be harmful to national security. Moreover, since the statements in the press were made by anonymous sources, even documents containing identical information may properly be withheld because "release would amount to official confirmation or acknowledgment of their accuracy." *Washington Post*, 766 F.Supp. at 9.

■ Further, the fact that the FBI provided information to members of Congress regarding plaintiff's whistleblower allegations does not deprive defendant of the right to classify the information under Exemption 1, for disclosure of information to a congressional committee does not constitute a waiver. *See Fitzgibbon*, 911 F.2d at 766 (government transmission of "an official document to a congressional committee does not mean that the Agency can thereby automatically be forced to release

any number of other documents"); *Murphy v. Dep't of the Army*, 613 F.2d 1151, 1156 (D.C.Cir.1979) ("we conclude that, to the extent that Congress has reserved to itself in Section 552(c) the right to receive information not available to the general public, and actually does receive such information pursuant to that section . . . , no waiver occurs of the privileges and exemptions which are available to the executive branch under the FOIA"); *Safeway Stores v. FTC*, 428 F.Supp. 346, 347 (D.D.C.1977) ("Disclosure to an authorized congressional committee does not waive the exemption.")

■ Thus, it is not "disingenuous," as argued by plaintiff (Pl.'s Opp. at 18), for the defendant to classify information that is arguably in the public domain. At least in the area of national security, it is accepted that an agency can determine that disclosure of information already in the public realm "reasonably could be expected to cause damage to the national security," *Washington Post*, 766 F.Supp. at 10, and as this Circuit has recently cautioned, "[t]he court should not second-guess the executive's judgment in this area." *Ctr. for Nat'l Security Studies*, 331 F.3d at 931. Applying this admonition, this Court will accept the predictive judgments reflected in the government declarations regarding the harm to the national security that reasonably could be expected to occur from further disclosure, and it will therefore sustain defendant's claim under Exemption 1.[8]

---

**8.** Defendant has asserted Exemption 7(D) to withhold some of the information also withheld under Exemption 1. (*See, e.g.,* Edmonds–1381.) Exemption 7(D) permits the withholding or redacting of law enforcement records where disclosure "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Since the Court finds that

this information is properly classified and withheld under Exemption 1, it need not address withholding pursuant to Exemption 7(D). However, it is clear from the classified affidavit and index that Exemption 7(D) has been asserted properly to protect a source who provided information under an express assurance of confidentiality. *See United States Dep't of Justice v. Landano*, 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (exemption applies to information where agency establishes that the source

## IV. Exemption 2

Under Exemption 2, the government is not required to disclose information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Only information that is "used for predominantly internal purposes" is protected under Exemption 2. *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C.Cir. 1981). Information is "predominantly internal" if it does not "purport to regulate activities among members of the public or set standards to be followed by agency personnel in deciding whether to proceed against or take action affecting members of the public." *Cox v. United States Dep't of Justice*, 601 F.2d 1, 5 (D.C.Cir.1979).

If the "predominantly internal" test is met, an agency may withhold material if it shows that "either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest." *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C.Cir.1992) (citation omitted). Predominantly internal documents that fall into the first category are protected by the "high 2" exemption; those in the second category are protected by the "low 2 exemption" *Id.*

Defendant has invoked Exemption 2 to withhold both "high 2" and "low 2" information, including (1) portions of polygraph examinations ("Exemption 2–1"); (2) internal rules for language services ("Exemption 2–2"); and (3) defendant's secure facsimile numbers ("Exemption 2–3"). (Hardy Decl. ¶ 12.)

The Court has identified only six pages withheld in whole or in part pursuant to Exemption 2 that are not also classified and properly withheld pursuant to Exemption 1. As the Court has already found that the classified material has been properly

withheld under Exemption 1, only these six pages need be addressed here. Three of these pages are discussed herein, but as to Edmonds–775, 776, and 777, defendant has failed to explain the rationale for withholding these documents under Exemption 2. Consequently, having no basis for determining whether these pages have been properly withheld, the Court will require defendant to provide additional information as to these three documents. The remaining three documents (Edmonds–1329, 1357, and 823) have, however, been properly withheld.

### A. Polygraph Information

Edmonds–1329 is a polygraph worksheet for plaintiff's December 4, 1998 polygraph examination that has a section of material redacted pursuant to Exemptions 2–1 and 7(E). As the Court finds that this information is properly withheld pursuant to Exemption 7(E), *see infra* Section VIII, it need not be addressed here.

### B. Internal Rules for Language Services

The material withheld under Exemption 2–2 (*see* Edmonds–1359) contains the internal rules and regulations used to grant a waiver from the ordinary language testing requirements for the position of Contract Language Monitor. (Hardy Decl. ¶ 29.) These rules and regulations are "predominantly internal." They pertain only to particular government employees and do not "purport to regulate activities among members of the public." *Cox*, 601 F.2d at 5. Thus, they meet the threshold test for Exemption 2.

Plaintiff argues that the information should not be withheld because defendant "has not cited any foreseeable adverse consequence for the release of this

"provided information under an express as- surance of confidentiality").

information." (Pl.'s Opp. at 20.) However, a showing of a "foreseeable adverse consequence" is only relevant to the "high 2" information, and not to these internal rules, which are "low 2" information "of a relatively trivial nature" and "of no genuine public interest." (Def.'s Reply at 13–14.) Nor does plaintiff challenge this classification of "low 2," since she fails to articulate any public interest in the withheld information. *See Billington v. Dep't of Justice*, 11 F.Supp.2d 45, 70–71 (D.D.C. 1998) (internal information properly withheld under low–2 exemption where plaintiff "did not even touch upon a public interest in the material"), *vacated in part on other grounds*, 233 F.3d 581 (D.C.Cir. 2000). In addition, the redacted information is marked "For internal use only." For these reasons, the Court finds that the waiver rules and regulations redacted from Edmonds–1359 are properly withheld under Exemption 2.

### C. Secure Facsimile Numbers

██ Defendant has redacted secure facsimile numbers under Exemption 2–3 from Edmonds–823. These numbers are used only by FBI Special Agents and staff conducting classified or sensitive investigations—and not by the general public. (Hardy Decl. ¶ 30.) Their release "could significantly risk circumvention of the FBI's law enforcement ability by providing those with the intent of breaking the law the ability to monitor or block the FBI's secure facsimile lines. These actions would, at best, make this equipment worthless to the FBI in supporting its investigations and could possibly jeopardize the information transmitted on these machines." (*Id.*) Plaintiff also concedes that she has no interest in these numbers

(Pl.'s Opp. at 21.) [9] Therefore, this Exemption 2 claim will be sustained.

### V. Exemption 5

██ Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 has been held to incorporate the privileges that are available to an agency in civil litigation, including the deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine. *NLRB v. Sears, Roebuck & Co.* 421 U.S. 132, 148–49, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). It "unequivocally" incorporates "all civil discovery rules into FOIA." *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1185 (D.C.Cir.1987). Defendant here invokes Exemption 5 to withhold information based upon all of these litigation privileges. Defendant also notes that "[w]ith one exception, all of the documents that contain Exemption 5 material were also withheld in their entirety under Exemptions 7(A) or 7(C) and many of them also have portions protected by Exemption 1." (Def.'s Reply at 16.) As the Court is affirming withholdings pursuant to these exemptions, it need not address the propriety of withholding this material under Exemption 5. *See Center for National Security Studies,* 331 F.3d at 925 (where a court concludes that information is protected from disclosure under one of the FOIA exemptions invoked by the government, it need not address the propriety of any additional exemptions claimed by the government). However, the Court is unable to determine which, if any, documents or portions thereof have been withheld solely

---

9. Plaintiff claims that she is unable to determine from the Hardy Declaration whether defendant is withholding entire pages of information based on this exemption. (Pl.'s Opp. at 21.) There is no basis for this confusion.

Secured facsimile numbers are withheld from one document (Edmonds–823), which is clearly an organizational chart that has redactions for the numbers only.

pursuant to Exemption 5. Consequently, the Court directs defendant to review all information withheld pursuant to Exemption 5 and identify all documents or portions thereof which are being withheld only under Exemption 5. It shall then file an affidavit that identifies any such information and explains the basis for invoking Exemption 5 so that the Court can evaluate defendant's claim under Exemption 5.[10]

## VI. Exemptions 6 and 7(C)

 Exemption 6 permits withholding information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" but only to the extent that the production of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both exemptions require that the Court balance the privacy interests of the subjects of the requests with the public's interest in disclosure to determine whether defendant's non-disclosure is proper. *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1281 (D.C.Cir. 1992).

 Defendant has invoked Exemptions 6 and 7(C) to protect the names and identifying data of FBI special agents and support personnel and third parties. Defendant bears the burden of establishing that the balance tips in favor of privacy, thereby justifying the withholding of

the requested material under the asserted exemptions. 5 U.S.C. § 552(a)(4)(B). However, it is plaintiff's burden to support her claim that disclosure of withheld information advances the public interest. *King*, 830 F.2d at 234. With respect to disclosure under FOIA, the public interest is limited to that which "sheds light on an agency's performance of its statutory duty" in order to inform the citizens "about what their government is up to." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

Plaintiff has not demonstrated how the disclosure of the individual identities of FBI personnel and third parties would serve the public interest. The fact that the underlying documents relate to plaintiff's whistleblower allegations about misconduct in the FBI's Language Division (*see* Pl.'s Opp. at 34–35) does not create a public interest in the identities of these individuals, for there is no reason to believe that disclosure would shed light on the allegations under investigation. In contrast, this Court has "admonished repeatedly" that witnesses, informants, and investigating agents have a "substantial interest in seeing that their participation remains secret" and that "[t]hird parties discussed in investigatory files may have a similarly strong interest in nondisclosure." *King*, 830 F.2d at 233; *see also Lesar*, 636 F.2d at 487 (recognizing that FBI agents have a legitimate privacy interest in their names).

---

**10.** Plaintiff also argues that defendant improperly asserts that all information exempt under Exemption 1 is also exempt under Exemption 5 as a result of the state secrets privilege and that the declarations of Attorney General Ashcroft and Deputy FBI Director Gebhardt do not satisfy the requirements for invoking the state secrets privilege. (Pl.'s Opp. at 23–34.) The Court need not address the validity of the state secrets privilege in order to determine whether the withholdings in this case are proper, since it has upheld their nondisclosure on the basis of Exemption 1. Moreover, the Court did not review the Ashcroft or Gebhardt Declarations to evaluate the assertion of the state secrets privilege, but only as background information to assist in understanding the government's basis for classifying information pursuant to Exemption 1.

The individuals whose identities have been withheld have a significant privacy interest at stake. For example, as defendant notes, the public identification of FBI agents "could subject them to harassment or unofficial questioning in the conduct of their official duties or private lives and could lead to the attempted compromise of these employees." (Hardy Decl. ¶ 39.) Moreover, the release of an agent's identity in connection with a particular law enforcement or national security investigation may also create animosity toward that agent and any type of publicity concerning a particular investigation may seriously prejudice the agent's effectiveness in conducting future investigations. (*Id.* ¶ 55.) Similarly, FBI support personnel have access to information regarding investigations and "may become targets of harassing inquiries for unauthorized access to information" so that the release of their identities could have the same impact as the disclosure of agent identities. (*Id.* ¶ 56.) Third parties mentioned in investigative files also have privacy interests at stake as disclosure could cast them in an unfavorable or negative light regardless of whether they were of investigative interest to the FBI. (*Id.* ¶¶ 40, 57.)

▮ The Court agrees that "[t]he privacy interests of third parties mentioned in law enforcement files are 'substantial' while '[t]he public interest in disclosure [of third party identities] is not just less substantial, it is unsubstantial.' " *Blanton v. United States Dep't of Justice*, 63

F.Supp.2d 35, 45 (D.D.C.1999) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir.1991)). Thus, the Court concludes that the privacy interests at stake outweigh the public interest in disclosure and that defendant properly refused to reveal the identities of individuals referenced in the responsive documents.[11] Moreover, the fact that "names of several persons have already been identified" in the media (Pl.'s Opp. at 35) does not lessen their privacy interest or "defeat the exemption," [12] for prior disclosure of personal information does not eliminate an individual's privacy interest in avoiding subsequent disclosure by the government. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 762–63, 770, 109 S.Ct. 1468 (just because "an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information"). Moreover, "publicity in the popular media cannot vitiate the FOIA privacy exemption." *Bast v. United States Dep't of Justice*, 665 F.2d 1251, 1255 (D.C.Cir.1981); *see also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C.Cir.1998) (official's statement to the press that he was investigated and disciplined did not waive his privacy interests for FOIA purposes). Accordingly, defendant's motion for summary judgment is granted with respect to information withheld pursuant to Exemptions 6 and 7(C).

## VII. Exemption 7(A)

▮ Exemption 7(A) shields from disclosure "records or information compiled

---

11. Plaintiff's argument that high-ranking supervisory or managerial FBI officials have a diminished privacy interest and that, for this reason, their identities should not be withheld (Pl.'s Opp. at 35) does not change this analysis. Since plaintiff has not demonstrated that disclosure would advance a public interest, the results of the Court's balancing test will not change regardless of whether plaintiff's legal assertion is accurate.

12. In addition to the media reports (*see* Pl.'s Exs. 10, 11, 15, and 18), plaintiff also references her husband's affidavit stating that three FBI Special Agents were identified in the Computer Custody Log Sheet provided to him. (*See* Pl.'s Ex. 3, Affidavit of Matthew Edmonds ["M. Edmonds Aff."] ¶ 9). As described *supra* note 5, these names have been properly withheld under Exemption 1.

for law enforcement purposes, but only to the extent that the production of such records could ... interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Thus, an investigatory record must meet two criteria to fall within Exemption 7(A): first, it must be "compiled for law enforcement purposes," and second, its release must "interfere with enforcement proceedings."

 Defendant need not demonstrate how the release of the withheld documents would interfere with law enforcement proceedings on a document-by-document basis. Rather, defendant may "group[ ] documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each ... category of documents, if disclosed, would interfere with the investigation.'" *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986) (quoting *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C.Cir. 1982)).

 The categories relied upon, however, must be "functional"—"allowing the court to trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C.Cir.1986). In order to utilize this categorical approach, defendant must "conduct a document-by-document review" of all responsive documents to assign documents to the proper category and "explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis*, 801 F.2d at 1389–90.

 Plaintiff argues that defendant's withholding under Exemption 7(A) is improper because defendant has not adequately described the material withheld and, in particular, has not distinguished between documents directly generated in connection with the ongoing OPR and OIG investigations and documents generated prior to the investigations. (Pl.'s Opp. at 35–36.) A review of paragraphs 49–51 of the Hardy Declaration disproves this claim. Moreover, Exemption 7(A) requires only that disclosure of material would interfere with a "concrete prospective law enforcement proceeding," *Carson v. United States Dep't of Justice*, 631 F.2d 1008, 1018 (D.C.Cir.1980) (internal quotation and citation omitted), and does not contain a limitation on withholding based on when or why the document was generated.

Defendant has done all that is required to justify its withholdings under Exemption 7(A). *See Bevis*, 801 F.2d at 1389–90. The material withheld was compiled as part of the law enforcement investigations by OPR and OIG. (Hardy Decl. ¶ 47.) Defendant has invoked this exemption to withhold the entire OPR investigatory file, which is maintained according to agency guidelines,[13] and other documents that were provided to OIG as part of its investigation of plaintiff's allegations and which OIG advises are subject to Exemption 7(A). (Hardy Decl. ¶¶ 44–45.)

Defendant does not, however, assert that these documents are protected from disclosure based solely on the fact that they are contained in investigatory files. *See Crooker*, 789 F.2d at 65 (affidavit stating only that "requested documents are contained in a criminal investigation file" is impermissibly general and does not justify withholding under Exemption 7(A)). Defendant performed a document-by-document review of the responsive material

---

13. This includes the pages marked Edmonds–208 through Edmonds–386 and Edmonds–956 through Edmonds–1160. Much of this information is also withheld under Exemption

1. Defendant did not invoke Exemption 7(A) to withhold public source information, such as newspaper articles, contained in the OPR file. (Hardy Decl. at 23 n. 13.)

and grouped the withheld material into two functional categories: evidentiary and investigative materials. (Hardy Decl. ¶ 50.) Defendant has also provided a detailed discussion of the materials contained within each functional category and the reasons that disclosure would interfere with the pending investigations. (*Id.*)

The evidentiary material is comprised of third-party statements and physical evidence that is either actual evidence or derived from such evidence (*i.e.*, material describing the contents of the original evidentiary record, how it was obtained, or how it relates to the investigation). (*Id.* ¶ 50.) The Hardy Declaration explains that third-party statements are one of the principal tools used in an investigation, that the physical evidence withheld includes correspondence with third parties and the product of investigative techniques, and that disclosure of such material could taint future disclosures and stifle the cooperation of individuals who have provided information with the understanding that their identities and the information provided would be protected. (*Id.*) The investigative material withheld includes investigation reports, communication with third parties who provided information helpful to the investigation and administrative materials (*i.e.*, transmittal forms, notes, memoranda, and letters). The release of these documents could interfere with the investigations by revealing the nature and scope of the investigations, investigative activities, the cooperation of particular individuals, the identity of potential witnesses, and the investigative steps taken to pursue interviews with individuals who can inform investigators. (*Id.*) Defendant has also explained that the release of this information could stifle cooperation, impede the success of the investigations, and lead to the harassment or intimidation of individuals involved in the investigations. (*Id.*) Thus, defendant has

not claimed the type of "blanket exemption ... for all records in a file simply because they are in a file" that has been rejected in the past. *See Crooker*, 789 F.2d at 66. Nor has defendant employed categories such as " 'teletypes' or 'airtels' or letters" ' that give "absolutely no indication of the substance of the information contained." *Bevis*, 801 F.2d at 1390.

Moreover, the likelihood of intimidation of individuals involved in the investigation has been found to justify the withholding of information by both the Supreme Court and this Circuit "[o]n numerous occasions." *Ctr. for Nat'l Security Studies*, 331 F.3d at 929 (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 239–42, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) and listing Circuit Court cases). Finally, the Circuit Court recently chronicled in detail the "weight of authority counseling deference [to the government's judgments contained in affidavits] in national security matters" and concluded that the deference that has historically been given to the executive when it invokes FOIA Exemption 1 must be extended to Exemption 7(A) in cases like this one, where national security issues are at risk. *Id.* at 927–28. Thus, the Court concludes that the Hardy Declaration provides an adequate basis for the Court to affirm defendant's assertions that release of the information withheld pursuant to Exemption 7(A) would interfere with enforcement proceedings, and thus, defendant's withholding under Exemption 7(A) will be upheld.

## VIII. Exemption 7(E)

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecu-

tions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Defendant asserts this exemption to withhold some of the questions asked during plaintiff's polygraph examinations and numerical ratings assigned to her responses. (Hardy Decl. ¶ 60.)

 To determine that information is properly withheld under Exemption 7(E), the Court must find that: (1) the information was "compiled for law enforcement purposes," and (2) release of the information could reasonably be expected to risk circumvention of the law. *FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); *see also Coleman v. FBI*, 13 F.Supp.2d 75, 83 (D.D.C.1998). Here, there is no dispute that the information was compiled for law enforcement purposes and the Hardy Declaration affirms that release of this information could allow individuals "to employ countermeasures that could defeat the usefulness of polygraph examinations" in the future. (Hardy Decl. ¶ 60.) The Court finds that this is an adequate basis for withholding polygraph test information.

Plaintiff does not dispute defendant's rationale for withholding but argues that defendant has not adequately described the information withheld and that defendant's withholding of polygraph information under a variety of exemptions is inconsistent and improper. (Pl.'s Opp. at 20.) The Court disagrees. First, the Hardy Declaration adequately describes the information withheld (Hardy Decl. ¶ 60) and the number of pages withheld is evident from the codes on the documents and DPIS's. (*See* Edmonds–1329, 1333–1346, 1361–1368.) Next, there is no basis for plaintiff's objection to the fact that defendant has not specified the exact polygraph exam which has been withheld. (Pl.'s Opp. at 20.) The date of the polygraph exams that were the subject of withholding is irrele-

vant as the release of the questions and the coding of the responses "would frustrate enforcement of the law" regardless of the date. *Blanton*, 63 F.Supp.2d at 50. *See also Shores v. FBI*, 185 F.Supp.2d 77, 85 (D.D.C.2002) (release of polygraph information "could defeat the effectiveness of any polygraph examinations ... in the future"); *Coleman*, 13 F.Supp.2d at 84 ("the release of particular details with regard to an individual [polygraph] test could foreseeably circumvent the entire process"); *Perrone v. FBI*, 908 F.Supp. 24, 28 (D.D.C.1995) ("it is important to the effectiveness of a polygraph examination that the exact questions to be asked and their sequence not be known by the examinee"). Further, the fact that defendant released some polygraph questions and withheld some polygraph information under Exemption 1 rather than Exemptions 2 or 7(E) (*see* Edmonds–1355, 1356) does not invalidate withholding under Exemption 7(E). It merely reflects a thoughtful consideration of each document rather than a categorical withholding of all polygraph information under a single exemption. Clearly, the government determined that there was no basis for withholding questions that had been released and that some information could be classified while other information could only be properly withheld under other exemptions.

Since the substance of the withheld information is clear from the Hardy Declaration and this declaration also convincingly describes how the release of this information might create a risk of circumvention of the law, the Court concludes that defendants has properly invoked Exemption 7(E) to withhold polygraph information.

## IX. Segregation of Non–Exempt Portions of Withheld Material

FOIA requires agencies to release "any reasonably segregable portion of a record

... after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Schiller*, 964 F.2d at 1209 (internal quotations and citation omitted). The Hardy Declaration affirms that "[e]very effort was made to provide the plaintiff with all reasonably segregable portions of responsive material." (Hardy Decl. ¶ 12.)

 Where only portions of a document are exempt from disclosure, defendants have clearly "correlate[d] the theories of exemptions with the particular textual segments which it desired exempted" rather than withholding the entire document. *Schwartz v. IRS*, 511 F.2d 1303, 1306 (D.C.Cir.1975). The segregable portions of those documents have been disclosed. *See Church of Scientology of Calif. v. Dep't of State*, 493 F.Supp. 418, 421 (D.D.C.1980) (finding that defendant segregated and released all non-exempt portions of redacted documents where it described the redacted material and the reason for each redaction.) Where entire documents are exempt, defendant has affirmatively determined that there is no segregable material that can be disclosed. (Hardy Decl. ¶¶ 4, 12.) Moreover, this Court has found that an agency's decision to withhold entire documents pursuant to Exemption 1 may be upheld based on their classified nature. *See Anderson v. CIA*, 63 F.Supp.2d 28, 30 (D.D.C.1999) (finding documents withheld by the CIA pursuant to Exemption 1 to be exempt without reference to segregability in light of the "highly classified context" of the case).

Given the effort made to disclose segregable material and to explain why information in other documents is not segregable, the Court has no reason to question defendant's segregability determinations. These efforts make clear that defendant undertook an analysis to determine what, if any, non-confidential information could be released. Accordingly, the Court finds that defendant "has carefully and methodically sought to respect the principle 'that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.'" *Canning v. Dep't of Justice*, 848 F.Supp. 1037, 1049 n. 2 (D.D.C.1994) (quoting *Schiller*, 964 F.2d at 1209).

## X. Reasonableness of Search for Responsive Documents

 Plaintiff claims that since defendant failed to provide plaintiff with adequate information describing the withheld documents, defendant has failed to demonstrate that its search for responsive documents was reasonable. (Pl.'s Opp. at 38.) However, the adequacy of defendant's affidavit and coding system have no bearing on the reasonableness of its search. An agency can prevail on a motion for summary judgment if it shows, "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir. 1983). For purposes of this showing, the agency "may rely upon affidavits ..., as long as they are relatively detailed and nonconclusory and submitted in good faith." *Id.* (citations omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1990). The fundamental issue is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984)

Defendant avers that it searched the two record systems in which responsive records were likely to be found: its Central Records System (CRS) and its Electronic Surveillance index (ELSUR). (Declaration of Christine Kiefer ["Kiefer Decl."] ¶ 35.) The CRS contains all pertinent information that the FBI has acquired in the course of fulfilling its mandated law enforcement responsibilities including administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes. (*Id.* ¶ 30.) The CRS search produced four main files and one cross-reference file responsive to plaintiff's request. (*Id.*) Searches of individual employees' offices produced additional documents. (Hardy Decl. ¶ 7.)

The Kiefer Declaration provides an extensive explanation of the CRS and the indexing systems used to locate records. (Kiefer Decl. ¶¶ 30–34.) This detailed account of the search method and the identification of more than 1,400 responsive documents suggests that the agency made a good faith effort to uncover all documents related to plaintiff. *Canning,* 848 F.Supp. at 1050 (finding search for requested records reasonable based on a search process similar to the search described by defendant in the instant matter). Moreover, plaintiff has not pointed to any evidence or even articulated a relevant basis for challenging the reasonableness of defendant's search. She only argues that defendant has "over-classified" responsive documents, depriving plaintiff of an opportunity to challenge the agency's search effort. (Pl.'s Opp. at 39.) The Court has already rejected plaintiff's argument that documents were improperly classified. Accordingly, the Court finds that defendant has demonstrated that it adequately searched all files reasonably likely to contain responsive records. *See Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982) ("in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.").

## XI. Discovery

"Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. United States Dep't of Justice,* 217 F.Supp.2d 29, 35 (D.D.C.2002); *see also Judicial Watch, Inc. v. United States Dep't of Justice,* 185 F.Supp.2d 54, 65 (D.D.C.2002) ("discovery is not favored in lawsuits under the FOIA"). Given the Court's conclusions, there is no basis for granting discovery here. The Court has determined that the classified index and declaration adequately justify the withholding of classified information. As previously discussed, there is no basis for the Court to examine an agency's reasons or motives for classifying information. *See EPA v. Mink,* 410 U.S. 73, 84, 93 S.Ct. 827, 35 L.Ed.2d 119 (1993) (FOIA is not intended "to subject executive security classifications to judicial review at the insistence of anyone who might seek to question them"). Moreover, those documents that were improperly marked have been corrected and resubmitted. (*See* Def.'s Reply Ex. 1.) In addition, in the limited circumstances where the public declaration and coded documents have been found to be insufficient, the Court is directing defendant to provide additional information describing the withheld information and the basis for the claimed exemption. This step, not discovery, is appropriate where defendant has failed to adequately describe information withheld.

### *CONCLUSION*

For the reasons discussed above, the Court finds that, except where specified,

the defendant's declarations, coding system, and classified index describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project,* 656 F.2d at 738. Accordingly, defendant's motion for summary judgment with respect to Exemptions 1, 6, 7(A), 7(C), 7(D), and 7(E) is granted. The Court also grants defendant's motion with respect to Exemption 2 except for the documents marked Edmonds–775, 776, and 777. The Court reserves ruling on these three documents, as well as any information withheld solely pursuant to Exemption 5, pending receipt and review of the additional information requested from defendant. A separate Order accompanies this Memorandum Opinion.

### *ORDER*

Upon consideration of defendant's motion for summary judgment, plaintiff's opposition, defendant's reply, and the entire record in this case and for the reasons given in the attached Memorandum Opinion, it is hereby

**ORDERED** that the Defendant Federal Bureau of Investigation's Motion for Summary Judgment [30–1] is **GRANTED IN PART** with respect to Exemptions 1, 6, 7(A), 7(C), 7(D), 7(E) and Exemption 2, except that the Court reserves ruling with respect to documents marked Edmonds–775, 776, and 777; it is

**FURTHER ORDERED** that the Court reserves ruling with respect to any information withheld solely on the basis of Exemption 5; and it is

**FURTHER ORDERED** that by August 8, 2003, defendant shall file an affidavit describing the documents marked Edmonds 775, 776, and 777 and justifying

their withholding under Exemption 2; and it is

**FURTHER ORDERED** that by August 8, 2003, defendant shall provide an affidavit describing any documents withheld pursuant to Exemption 5 that have not been found, pursuant to this Order, properly withheld under another FOIA exemption and justifying their withholding under Exemption 5; and it is

**FURTHER ORDERED** that plaintiff shall file any objections to defendant's continued withholdings by August 19, 2003.

**SO ORDERED.**