Harry C. **PIPER, III** Plaintiff,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et. al. Defendants.**

**No. CIV.A.98–1161 RCL.**

United States District Court, District of Columbia.

Dec. 1, 2003.

Daniel S. Alcorn, Falls Church, VA, for Plaintiff.

Beverly M. Russell, Charlene Denise Bey–Proctor, Michael C. Johnson, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on the motion for summary judgment of defendants United States Department of Justice (DOJ), Federal Bureau of Investigation (FBI), and Department of the Air Force, Office of Special Investigations (AFOSI), and plaintiff's response thereto. Plaintiff Harry C. Piper's cross-motion for summary judgment, defendants' response, and plaintiff's reply is also before the Court. Upon consideration of the briefing, the law, and the record in this case, the Government's motion for summary judgment will be granted, except that the Court orders document 206 and a memorandum referenced in document 309 released to plaintiff. The Court further orders defendant to locate and release to plaintiff documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340. Plaintiff's cross-motion for summary judgment is hereby granted with respect to the aforementioned documents, and denied with respect to all other asserted claims.

### I. BACKGROUND

This case arises before the Court under the Freedom of Information Act (FOIA) 5 U.S.C. § 552. On December 22, 1997, plaintiff filed a FOIA request for all records pertaining to the 1972 kidnapping of his mother, Virginia Lewis Piper. Plaintiff plans to write a book about his mother's kidnapping and the resulting FBI investigation and DOJ prosecution of the suspected kidnappers. (Piper Decl. at 1.) Plaintiff's request was submitted to the Executive Office for United States Attorneys (EOUSA) and the FBI. There have been numerous communications between the parties since that date. Plaintiff filed his complaint on May 8, 1998. Defendant DOJ filed its first partial summary judgment motion as to plaintiff's FOIA request to EOUSA on December 15, 1998. The Court denied this motion on April 22, 1999. The last few years have brought exchanges of protective orders and partial

summary judgment motions. Several issues have since been resolved, and this case enters its final stage.

The FBI has released approximately 80,000 pages of documents to plaintiff in response to his request. An agreement between the parties was reached culminating in plaintiff sampling 357 pages from the approximated 80,000. This sample, or what is commonly known as *Vaughn* indices in FOIA circles, contains documents that have redactions or have been completely withheld pursuant to several of the nine disclosure exemptions of FOIA. At issue in this case is the adequacy of the FBI's search and the propriety of the FBI's nondisclosure under Exemptions (7)(C), (D), and (E). Having completed its search for documents responsive to plaintiff's request, the Government moved for summary judgment on May 16, 2003. Plaintiff responded in kind with a cross-motion for summary judgment on June 16, 2003.

## II. ANALYSIS

### A. The Freedom of Information Act & the Standard of Review

The Freedom of Information Act, 5 U.S.C. § 552, as amended by the Freedom of Information Reform Act of 1986, §§ 1801–04 of Pub.L. No. 99–570, 100 Stat. 3207, 3207–48 (1986), provides citizens a statutory right of access to government information. Underlying the Act is the principle that "the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980). It is further established that while "Congress undoubtedly sought to expand public rights of access to Government information when it enacted [FOIA] . . . that expansion was a finite one." *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 983, 63 L.Ed.2d 293 (1980). Accordingly, FOIA instructs government agencies to disclose agency records, unless the requested records fall within one of the Act's nine exemptions. Generally, FOIA requesters challenge agency nondisclosure by either arguing the claimed exemption has been improperly asserted, or by challenging the adequacy of the government's document search.

■ Summary judgment in a FOIA action is appropriate when the pleadings, together with the declarations, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313 (D.C.Cir.1988) (mere conflict in affidavits not sufficient to preclude an award of summary judgment); *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C.Cir.1980). FOIA matters are reviewed de novo and the nondisclosing agency bears the burden of justifying nondisclosure. 5 U.S.C. § 552(a)(4)(B); *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

■ To satisfy the attendant burden, agencies may rely on the declarations of their officials. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990); *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir. 1978). These declarations are accorded a presumption of expertise, *Pharm. Mfr. Ass'n v. Weinberger*, 411 F.Supp. 576, 578 (D.D.C.1976), provided the affidavits are clear, specific, and adequately detailed, setting forth the reasons for non-disclosure in a factual and non-conclusory manner; they must also be submitted in good faith. *See Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C.Cir.1979). Upon a finding the affidavits are sufficient, the court need not conduct further inquiry into their veracity. *Id.* Accordingly, a plaintiff must proffer proper evidence to support a claim that an

exemption has been improperly asserted in order to have a triable issue of material fact that will preclude awarding summary judgment to the defendant. *See Bennett v. Spear*, 520 U.S. 154, 168, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

 Agencies declining to produce requested documents must demonstrate that the claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). To demonstrate the validity of the claimed exemption, agencies are required to submit *Vaughn* indices that adequately describe the withheld information and explain how specific exemptions apply. *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). All reasonably segregable portions must be disclosed once the exempt portions have been redacted. *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C.Cir.1996). Additionally, the court is required to consider segregability issues even when the parties have not specifically raised such claims. *Trans–Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C.Cir.1999).

 Challenges to agency searches are guided by a reasonableness standard. *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C.Cir.1984). To be entitled to summary judgment, an agency need only show "that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Id.* (citation omitted). The court's inquiry is concerned with whether the search itself, and not the results of that search, was adequate. *Id.* Adequacy is judged by a reasonableness standard and is contingent upon the facts of each case. *Id.* Agencies may demonstrate the adequacy of their search by submitting "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* Affidavits including search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient. *Id.* at 1483.

## B. Adequacy of Search

Plaintiff challenges the adequacy of the search undertaken by the FBI for documents responsive to his December 1997 request. He argues the FBI destroyed evidence in its possession. He seeks leave to depose FBI and DOJ personnel suggesting this will lead to information concerning evidence destruction and the location of documents that have not been produced in this case. (Pl.'s Opp'n Mem. at 9, 13.) He further argues that missing records and gaps in serialization of documents provided to him make summary judgment for defendants on this issue improper. In pursuit of these missing documents, plaintiff claims, based on second hand information from James Lesar, Esq., that the FBI maintains additional abstracts of each record it receives and places these abstracts in a file index card format. These files would constitute a second and third set of records to check for missing content. (Pl.'s Opp'n Mem. at 14–5.)

### 1. Destroyed Documents

 The Government responds to plaintiff's first assertion with the use of colorful adjectives but then provides an actual answer. Defendants argues that plaintiff's request to depose Government personal on the destruction of documents is immaterial as to whether the FBI met its burden. It is also beyond the scope of FOIA. (Defs.' Reply Pl.'s Opp'n Mem. at 2, n. 1.) The Government provides no justification for this assertion; however, there is controlling authority to support it. In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 151—52, 100 S.Ct. 960, 63 L.Ed.2d 267, (1980), the Supreme Court asserted that "FOIA is only directed at

requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." The Court goes on to conclude that "[t]he Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." *Id.* That the Government once possessed responsive documents yet no longer does at the time of the FOIA request does not preclude summary judgment in the Government's favor. FOIA does not impose a document retention requirement on government agencies. *Green v. Nat'l Archives & Records Admin.*, 992 F.Supp. 811, 818 (E.D.Va.1998). Even where the Government was obligated to retain a document and failed to do so, "that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse." *Folstad v. Bd. of Governors of the Fed. Reserve Sys.*, 1999 U.S. Dist. LEXIS 17852, at *4 (W.D.Mich. Nov. 16, 1999). Plaintiff seeks leave of this Court to take depositions of current and former FBI and DOJ personnel who have knowledge of document destruction. Plaintiff prays the Court order an investigation and explanation of destruction of evidence because he claims the document destruction was illegal under 44 U.S.C. §§ 3301, 3303, 2107 concerning disposal of government records.

 Plaintiff's request is denied because it falls outside the scope of FOIA, thus rendering the issue moot. The documents the Government has destroyed can no longer be produced by worldly means. Destroyed documents are nonexistent and nonexistent documents cannot remain in someone's possession. FOIA is triggered by agencies having actual possession of the requested documents. *Kissinger*, 445 U.S. at 151—52, 100 S.Ct. 960. Even if the arguments concerning possible FBI violations of law regarding document destruction were taken as true, "they do not establish that the defendant actually has possession of the [documents], which is a prerequisite for FOIA liability." *Folstad v. Bd. of Governors of the Fed. Reserve Sys.*, 234 F.3d 1268, 2000 WL 1648057, at *1 (6th Cir.2000) (discussing similar allegations that the Government was required by law to retain certain documents but finding it a non-issue as it relates to a FOIA action). Therefore, summary judgment in the Government's favor is not precluded because the FBI does not possess these documents. This is not to suggest the Court takes lightly allegations of Government malfeasance. The Court has held government agencies accountable for their reproachful conduct in the past with appropriate sanctions. The facts of this case and allegations of wrong doing years before this FOIA action was initiated, however, do not permit a contrary finding to the aforementioned denial of plaintiff's request.[1]

### 2. Missing Documents

Plaintiff also challenges the adequacy of the Government's search by alleging many documents are missing from the files, and that there are gaps in the serialization of the files. (Pl.'s Opp'n Mem. at 14.) The FBI's Central Record System (CRS) maintains all information the FBI has acquired in the course of fulfilling its law enforcement mandate. (Davis Decl. at 8.) CRS records "consist of administrative, applicant, criminal, personnel, and other files

---

1. Allegations of government officials destroying documents germane to a FOIA request *after* that request has been initiated would compel judicial intervention on behalf of the requester. *See generally Judicial Watch v.* *Dep't of Commerce*, 34 F.Supp.2d 28 (D.D.C. 1998) (discussing discovery issues related to document destruction in violation of FOIA and court orders).

compiled for law enforcement purposes." (Davis Decl. at 8.) This system assigns numerical sequences to files that are broken down by subject matter. (Davis Decl. at 8.) While in the course of processing plaintiff's request, the FBI noted there were twenty-eight deleted page sheets which listed serials not in the files at the time of plaintiff's initial request. (Keeley Decl. at p. 40.) Accordingly, the FBI ran a double check of CRS and found that the serial numbers in question "were either omitted or missed in the serialization process as indicated on most of the deleted page sheets." (Keeley Decl. at 40.) This led the FBI to conclude that no pages existed in these locations within the files. (Keeley Decl. at 41.) In response to the FBI's conclusion, plaintiff asserts the Bureau has additional records it could search to locate the alleged missing documents. Plaintiff is informed by James Lesar, Esq., a member of the bar of this Court who is alleged to have extensive dealings with FBI records, that the FBI maintains two additional abstracts of each record received and indexes these abstracts in a file in index card format. (Pl.'s Opp'n Mem. at 14–5.) Plaintiff accordingly requests this Court order the FBI to check these abstracts.

■■■■ As previously stated, the court's inquiry regarding the adequacy of a search is the search itself and not the results thereof. *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C.Cir.1984). Since adequacy is judged by a reasonableness standard, the Court's inquiry is focused on whether the FBI's two searches of its Central Record System were reasonable. The Court is persuaded that the affidavits of Sherry L. Davis and Carol L. Keeley adequately describe the searches of all files likely to contain responsive materials

to plaintiff's request. ("[T]he court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive material (if such records exist) were searched.'" (citations omitted)); *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C.Cir.1984) ("In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith."). Here, the affidavits demonstrate the adequacy of the search because they identify the affiants, their respective positions within the FBI, the treatment of plaintiff's FOIA request, and explain, in detail, the FBI's Freedom of Information–Privacy Acts (FOIPA) Section's procedure regarding requests and the mechanics and scope of a CRS search. The D.C. Circuit Court of Appeals has stated that "agency affidavits that 'do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized' are insufficient to support summary judgment." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C.Cir.1994) (quoting *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C.Cir.1980)). The Government's affidavits do not suffer these deficiencies, thus, sufficiently demonstrating the adequacy of the search.

For these same reasons, the Court is satisfied with the FBI's explanation that the twenty-eight missing serials apparently do not exist.[2] The Government's affidavit indicates the FBI double checked the CRS for these documents and they were not found. The Government then provided relevant background information that ex-

---

2. The parties should take note that the missing serials discussed here are not related to the documents ordered disclosed for want of justification. The discussion of those documents is located below under the heading, "Unjustified Documents."

plains the serialization process and the possibility some documents may have slipped through the bureaucratic cracks of the vast administrative structure that is the FBI. (Keeley Decl. at 40–1.) This explanation is sufficiently detailed to meet the standard of reasonableness regarding the adequacy of the search. *Weisberg*, 745 F.2d at 1485. While the Government's search is sufficient to meets its burden under FOIA, it should be restated that the Government enjoys a good faith presumption in FOIA actions. *Ground Saucer Watch, Inc., v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981) (citing as an example *Goland v. CIA*, 607 F.2d 339, 355 (D.C.Cir. 1978)). In this case, the Court finds no material issue to rebut the Government's good faith presumption in the processing of this FOIA request. Thus, the Court need not consider speculative, second hand accounts of other possible records that the FBI may or may not have.

## C. FOIA Exemptions at Issue

### 1. Exemption 7(C)

■ Exemption 7(C) shields from disclosure law enforcement information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy" if released. 5 U.S.C. § 552(b)(7)(C). This subsection is appropriately invoked when the privacy interest is greater than the public interest in disclosure. The agency invoking Exemption 7(C) must first identify and evaluate the privacy interest implicated by disclosure. Then, the agency must balance this privacy interest against the public interest in disclosure. *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In this case, plaintiff argues the FBI failed to properly identify and weigh the public interest.[3] Plaintiff points to the high-profile

nature of this case, as it was highly publicized and involved "the largest ransom ever paid in U.S. history", and the newsworthy research efforts of plaintiff for his future book on his mother's kidnapping. (Pl.'s Opp'n Mem. at 16.) No convictions for the kidnapping, lack of recovery for the million-dollar ransom paid, a morally failed prosecutor, and accusations of evidence tampering and destruction, all suggest a strong public interest in this case. (Pl.'s Opp'n Mem. at 16–7.)

Much of · plaintiff's characterization of the kidnapping of his mother, Virginia Piper, and the characters involved-the prosecuting attorney, FBI, various suspects-show there would be some degree of public interest in this case generally. The interest in the details of this case, and plaintiff's subsequent research into it, would conceivably be an interesting news story; indeed, plaintiff has included with his opposition memorandum a few local news articles profiling his efforts to that end. (Pl.'s Ex. C.) But whether or not FBI documents related to the investigation of Virginia Piper's kidnapping are newsworthy is not in itself the kind of public interest FOIA seeks to serve. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 774, 109 S.Ct. 1468. It is settled that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the 'the basic purpose of [FOIA] to open agency action to the light of public scrutiny.'" *Id.* at 772, 109 S.Ct. 1468 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). Against this backdrop, the Court moves its attention to specific documents plaintiff is seeking.

---

**3.** Plaintiff does not challenge the FBI's application of nondisclosure Exemptions 1, 2, and

3 under FOIA, so the Court will not partake in any discussion related to those exemptions.

██ Plaintiff seeks a photograph of a smudged fingerprint that was lifted off of a shopping bag found in the kidnapper's car; the prosecution alleged it was defendant Larson's fingerprint. (Pl.'s Opp'n Mem. at 7.) Defense experts testified at trial that the photo exhibit of the shopping bag fingerprint introduced into evidence had been enhanced, probably by pencil, to create sufficient fingerprint identification points to show a match with defendant Larson's fingerprint. (Pl.'s Opp'n Mem. at 7.) Conversely, the FBI states, under an apparent cloud of contradiction, that a responsive document could not be located, (Keeley Decl. at 10), yet withheld under Exemption 7(C) are documents 205–06 that describe a latent fingerprint photograph on a piece of brown paper recovered from an automobile. (Ex. I, Docs.205–06.) Whether this contradiction is blunder or subterfuge, the Court will not inquire at this time. The Court orders the FBI to release document 206. Allegations the Government tampered with evidence in pursuit of its zealous prosecution of the suspected Piper kidnappers fall within the public interest covered by FOIA. Possible government tampering of evidence in a criminal trial, where liberty is no less at stake than justice, is particularly troubling to this Court. Releasing a photograph of an alleged government-doctored fingerprint sheds light on the FBI's performance of its statutory duties. This is so because collecting evidence and then preserving its integrity for eventual trial in accord with a criminal investigation constitutes a large part of how the FBI accomplishes its law enforcement mandate. Therefore, this photograph falls squarely within the FOIA's statutory purpose of shedding light on how the Government is performing its duties. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 773, 109 S.Ct. 1468.

The second prong of an Exemption 7(C) analysis is whether the privacy interest of an individual in nondisclosure is greater than the public interest in disclosure. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 776, 109 S.Ct. 1468. In *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), respondents, Reporters Committee for Freedom of the Press, sought information under FOIA concerning the criminal records of four members of the Medico family. The Medicos family-owned company was found to be a legitimate business dominated by organized crime figures. *Id.* at 757, 109 S.Ct. 1468. Respondents sought information on Medico family members past criminal history. *Id.* The pertinent issue was whether Charles Medico's interest in the nondisclosure of any rap sheet the FBI had on him is the sort of personal privacy interest covered by Exemption 7(C). *Id.* at 762, 109 S.Ct. 1468. The Court held disclosure of the content of an FBI rap sheet to a third party "could reasonably be expected to constitute an unwarranted invasion of personal privacy" within the meaning of Exemption 7(C). *Id.* at 780, 109 S.Ct. 1468. Considering the nature of the information contained in a criminal rap sheet-descriptive information, such as physical characteristics and date of birth, chronological history of arrest, charges, convictions, and incarceration information-the Court found a strong privacy interest in individual criminal histories. *Id.* at 752, 109 S.Ct. 1468. Here the document at issue, a photograph of defendant Larson's fingerprint, shares no common characteristics with a rap sheet. Human fingerprint marks are left, in some form or another, on everything we touch. The human eye cannot distinguish one man's fingerprint from another. A fingerprint does not reveal highly personal information about an individual's past criminal conduct *unless* that fingerprint is expressly being used by law enforcement personnel as trace evi-

dence to identify a suspect. Therefore, the Court finds a marginal privacy interest, if any, in the photograph of defendant Larson's fingerprint. In light of alleged FBI evidence tampering at trial, by enhancing the fingerprint in order to have a match with defendant Larson, this Court orders document 206 released to plaintiff.

In addition to the fingerprint photograph, document 309, a Government memorandum dated January 28, 1977, addresses and identifies the fingerprint found on the paper shopping bag as defendant Larson. The issue here is parenthetical information that states: "Separate memo being prepared re administrative action for missed identification." (Ex. I, Doc. 309.) The fate of this memo is not clear. It was not released to plaintiff. There is no accounting for it in the *Vaughn* index. This memorandum, if it exists, will add context and clarity to allegations of evidence tampering and why the FBI identified the fingerprint as defendant Larson's but was unable to match it to him, thereby shedding light on how the FBI is performing its statutory duties. The Government's argument that this document represents an internal administrative matter unrelated to plaintiff's request is tenuous. (Defs.' Reply Pl.'s Opp'n Mem. at 6, n. 2.) An allegation as serious as evidence tampering warrants disclosure. Disclosing the memo would aid the public in understanding how its premier federal law enforcement agency handles credible allegations of evidence tampering. Thus further shedding light on how the FBI is performing its duties. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773, 109 S.Ct. 1468. Therefore, the Court orders the FBI to release the memorandum that document 309 speaks of concerning administrative action.

Plaintiff also argues that the Government has made substantially over-broad Exemption 7(C) withholdings. (Pl.'s Opp'n Mem. at 22–33.) The FBI asserted Exemption 7(C) to protect names and/or identifying information concerning: (1) FBI Special Agents and support personnel; (2) non-FBI Federal law enforcement personnel; (3) third parties interviewed by the FBI; (4) third parties of investigative interest to the FBI; (5) individuals who were interviewed; (6) third parties who were mentioned in FBI files; and (7) activities of individuals interviewed under an express assurance of confidentiality. (Keeley Decl. at 27–34.) Plaintiff's arguments against the withholdings are predicated on the relative publicity the Piper kidnapping case received and the FBI's failure to adequately balance the public versus private interest in withholding. (Pl.'s Opp'n Mem. at 22–33.)

The D.C. Circuit Court of Appeals has stated that when examining the government's application of Exemption 7(C), " 'disclosing the identity of targets of law-enforcement investigation can subject those identified to embarrassment and potentially more serious reputational harm.' " *SafeCard Services v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir.1991) (quoting from *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 588 (1987)). In recognition of this danger, "Exemption 7(C) 'affords broad privacy rights to *suspects, witnesses,* and *investigators.*' " *Id.* at 1205 (quoting from *Bast v. DOJ*, 665 F.2d 1251, 1254 (D.C.Cir. 1981)) (emphasis added). Therefore, the "public interest in disclosure is not just less substantial, it is insubstantial." *Id.* Plaintiff seeks photographs of defendants, witnesses, possible suspects, and Virginia Piper at the recovery site, as well as a copy of Donald Larson's arrest report, and other informational material the FBI thought necessary to redact. (Pl.'s Opp'n Mem. at 22–33.) Again, the crux of the justification offered for releasing this material is that all the individuals in question have been exposed to media attention. The Court rejects plaintiff's request be-

cause the type of information requested is "simply not very probative of the [FBI's] behavior or performance." *Id.* at 1205. Moreover, the D.C. Circuit Court has firmly established that "unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant." *Id.* at 1205–206. Here, there is no allegation of illegal government activity that requires releasing the aforementioned photographs and other non-probative materials.

▮ Further tipping the scale in the Government's favor, the Supreme Court held that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The courts are to seriously limit unnecessary inquiries into factual minutiae which would be a poor use of judicial resources. *See SafeCard Services v. SEC,* 926 F.2d 1197, 1206 (D.C.Cir.

1991). Courts should not go through each issue raised under Exemption 7(C) on an ad-hoc basis. *See id.* When considering the purpose of FOIA, shedding light on an agency's performance of its statutory duty, releasing photographs and non probative informational material on private citizens does nothing to further the policy goals of FOIA. *See Reporters Comm. for Freedom of the Press,* 489 U.S. at 773, 109 S.Ct. 1468. Nothing can be learned here about the FBI's performance of its statutory duty by releasing photographs of defendants, witnesses, suspects, and the victim because a photograph reveals zero about the FBI's conduct. All that is learned is that an FBI agent took some photographs. These photographs evince nothing about the *how* the FBI is performing its duties. This rationale follows for plaintiff's request for Donald Larson's arrest report.[4] This report would shed no light on how the FBI conducts it legislative mandate. Therefore, the Court categorically finds that the FBI's Exemption 7(C) withholdings were proper under FOIA.[5]

### 2. Exemption 7(D)

Exemption 7(D) shields from disclosure "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to disclose the identi-

---

4. Donald Larson's arrest report also falls within the Supreme Court's ruling concerning criminal rap sheets in the context of Exemption 7(C). "When the subject of such a rap sheet is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." *DOJ v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

5. Plaintiff brought to the Court's attention that document 318, a photocopy of a photograph, may have been inadvertently released

to him by the FBI. Plaintiff has agreed not to publish or release the photograph until this Court rules on the Government's motion. Defendants did not move to have the document removed from public access. The document, however, is included in the Court's categorical ruling that FBI photographs were properly withheld under Exemption 7(C). Accordingly, the Court expects plaintiff to deliver document 318 to defendants if they so request. *Cf. Billington v. DOJ,* 69 F.Supp.2d 128, 137 (1999) ("The disclosure of unredacted records due to an administrative error does nothing to diminish the magnitude of the privacy interest of the individuals named in the such reports.").

ty of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). This Exemption affords the most comprehensive protection of all FOIA law enforcement exemptions. *See Irons v. FBI*, 880 F.2d 1446, 1452 (1st Cir.1989); *See also Brant Const. Co., Inc. v. EPA,* 778 F.2d 1258, 1262 (7th Cir.1985) ("The courts have thus recognized the need to provide a 'robust' 7(D) exemption to ensure that agencies are not unduly hampered in their investigations and that their confidential sources are not lost because of retaliation against the sources for past disclosure of because of the sources' fear of future disclosure.").

■■■ Under Exemption 7(D), an agency must show that a source provided information to the government under either (1) an express assurances of confidentiality or (2) under circumstances that support an implied assurance of confidentiality. *DOJ v. Landano*, 508 U.S. 165, 179–81, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). The Supreme Court instructs the courts to make a determination on a case-by-case basis when determining source confidentiality, but also noted that "[i]t may be true that many, or even most, individual sources will expect confidentiality." *Id.* at 176, 113 S.Ct. 2014. Even so, the Government is not extended a presumption of confidentiality for all information received during an investigation. *Id.* The relevant inquiry is "not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular

source spoke with an understanding that the communication would remain confidential." *Id.* at 172, 113 S.Ct. 2014. The level of confidentiality is somewhat discretionary with regard to what the FBI deems necessary for law enforcement. *Id.* at 174, 113 S.Ct. 2014.

Plaintiff argues the FBI made unacceptably broad withholdings under Exemption 7(D).[6] He asserts the Keeley Declaration is "bereft of any discussion of the source's relationship to the crime or perpetrators, or even any discussion of the crime itself..." and therefore the FBI's (b)(7)(D)—1 withholding is inappropriate. (Pl.'s Opp'n Mem. at 34–5.) Plaintiff also seeks any segregable releasable material from documents 193–94. (Pl.'s Opp'n Mem. at 35.) The Government withheld those documents, source symbol numbers, as necessary to protect sources that have been granted an express assurance of confidentiality. (Keeley Decl. at 37.) Source symbol numbers are assigned to informants that provide information to the FBI on a regular basis. (Keeley Decl. at 37.) The Government asserts that release of this information could lead to the identification of the source. (Defs.' Mot. Summ. J. at 34.)

■■■ Plaintiff does not raise any material issues with regard to the FBI's Exemption 7(D) –1 withholdings. General assertions of the "impermissible broad categorical" use of the exemption do not preclude summary judgment. The Supreme Court ruled that an implied assurance of confidentiality can be inferred be either (1) the Government pointing to a narrowly defined circumstance where it would be warranted or (2) showing generic circumstances where the inference may be appropriate. *Landano*, 508 U.S. at 179, 113 S.Ct. 2014. The character of the crime

---

**6.** Plaintiff does not challenge the Government's Exemption 7(D)—3 withholding, so

the Court will not discuss that exemption.

and the relation of the witnesses and informants thereto are used to measure the appropriateness of inferring an implied confidentiality assurance. *See Coleman v. FBI*, 13 F.Supp.2d 75, 82 (D.D.C.1998). In this case, the crime is a kidnapping that involved the forcible taking of Virginia Piper from her home in Minnesota in 1972. Two men carrying guns and wearing hoods barged into the Piper residence and handcuffed Mrs. Piper, put a pillowcase over her head, and then shoved her into the back of a stolen car. (Piper Decl. at 1–2.) The forcible and unexpected taking of a person against their will necessarily involves violence. The question is one of degree. The taking of Mrs. Piper was particularly violent because it involved guns as the primary instruments of coercion. Fortunately, Mrs. Piper was returned relatively unharmed from this ordeal but, as with any crime perpetrated with the aid of a firearm, the margin for deadly error was unacceptably high. Donald F. Larson and Kenneth J. Callahan were arrested and convicted on federal kidnapping charges in connection with the crime. These convictions were later overturned. (Piper Decl. at 2–3.) No one has since been charged or convicted for this crime. Because of the violent nature of the crime and that no one has yet been convicted of it, the Court is loath to jeopardize the safety of FBI informants by subjecting them to possible harassment, or worse, if their identities become public. The Court's concern is not put at ease merely because this crime happened over thirty years ago. Therefore, the Court finds that there existed an implied assurance of confidentiality between the FBI and its informants in this case. Accordingly, the FBI properly withheld documents about its sources of information under Exemption 7(D) –1.

The next issue is the propriety of the FBI's (b)(7)(D)—2 withholdings. Due to the Government's assertion that the source symbol numbers are being withheld pursuant to an express assurance of confidentiality, and that releasing that information could possibly lead to an identification of that source, the Court finds the information is confidential for the purposes of Exemption 7(D). With regard to any possible segregable material, the D.C. Circuit Court announced that "[i]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed *unless* they are inextricably intertwined with exempt portions." *Trans–Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C.Cir.1999) (emphasis added). Here, the FBI avers Exemption 7(D) was "asserted to protect information provided by these individuals, but only to the extent that the material might reveal the identity of those individuals." (Keeley Decl. at 36.) The FBI's assertion that materials were withheld only to the extent that such information may reveal the identity of the sources persuades the Court that there are no issues of segregability to be resolved.[7] If the Bureau decided that fully withholding document 194 was necessary to protect the

7. Upon review of documents 193–194 for segregability purposes, the Court is satisfied the FBI properly redacted information that could identify the FBI's sources. The Court understands plaintiff's desire to "have this information about the residence [he] grew up in", (Piper Decl. at 17), but FOIA's purpose is to shed light on how the government is performing its statutory duties, not to provide individual requesters with information because they may have a personal stake in it. The Supreme Court clearly stated that "the identity of the requesting party has no bearing on the merits of his or her FOIA request, ... [and] that the Act's sole concern is with what must be made public or not made public." *Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771–72, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

confidentiality of the sources involved, the Court is satisfied the FBI properly applied Exemption 7(D) in this context.

### 3. Exemption 7(E)

■ Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes ...[that] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b) (7)(E). Information properly withheld under this exemption must meet a two-part test: (1) the document or information was "compiled for law enforcement purposes," and (2) the release of the information "could reasonably be expected to risk circumvention of the law." *FBI v. Abramson*, 456 U.S. 615, 622, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); *see also Coleman v. FBI*, 13 F.Supp.2d 75, 83 (D.D.C.1998); *Edmonds v. FBI*, 272 F.Supp.2d 35, 56 (D.D.C.2003). Plaintiff seeks the results of all polygraph examinations that relate to the Piper kidnapping. He argues that FBI's withholding of polygraph examinations are improper because the techniques involved are "widely known." (Pl.'s Opp'n Mem. at 35.) This line of logic is unpersuasive.

In this case, the withholding agency is the FBI, the nation's chief law enforcement entity. The documents being withheld contain "logistical considerations involved in polygraph examinations." (Keeley Decl. at 39.) The polygraph examinations were administered to individuals in relation to the FBI's criminal investigation into the Piper kidnapping. Therefore, the documents at issue were compiled for law enforcement purposes, satisfying the first prong of the Exemption 7(E) threshold test. The next question is whether the FBI has made a showing that disclosure would frustrate future law enforcement efforts by way of circumvention. The Court is satisfied the Bureau has met its burden here. The FBI withheld the polygraph information because to release it would "reveal the use of various investigative techniques which are not widely known by the public. The release of this information would disclose the identity of logistical considerations involved in polygraph examinations. Such disclosure would enable subjects of FBI investigations to circumvent similar current used techniques." (Keeley Decl. at 39.) It is widely recognized that release of information with regard to an individual test could foreseeably circumvent the entire polygraph process. *See Coleman*, 13 F.Supp.2d at 84; *see also Shores v. FBI*, 185 F.Supp.2d 77, 85–5 (D.D.C.2002) (finding the Government's withholding of all information concerning a polygraph examination proper under Exemption 7(E)); *Edmonds*, 272 F.Supp.2d at 56 (stating release of the questions and the coding of the responses would frustrate law enforcement efforts). Releasing the questions and answers of FBI administered polygraph examinations has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique. Armed with this knowledge, the criminal could anticipate and avoid the questioning strategy of the FBI. Avoiding this strategy does violence to the polygraph examination's function—the discerning of truth. The Court is not inclined to aid and abet society's criminal element by ordering this information released. Hence, the FBI's withholding of polygraph materials was proper under Exemption 7(E).[8]

---

8. Plaintiff asserts that the FBI wrongly classified logistical considerations involved in poly-
graph examinations under Exemption 2,

■ Defendants also invoke Exemption 7(E) to protect sensitive electronic monitoring devices that are not widely known by the public. (Keeley Decl. at 40.) Plaintiff argues that the crime in question happened over 30 years ago and therefore any monitoring device the Government used is probably widely known today. (Pl.'s Opp'n Mem. at 37.) This argument must fail for the same reasons plaintiff's previous argument regarding Exemption 7(E) failed. The FBI claims it withheld information to the extent that the release of it would disclose the identity of the electronic device used for monitoring purposes. Disclosing it would reduce its effectiveness and allow for individuals being investigated by the FBI to take countermeasures to circumvent the technique. (Keeley Decl. at 40.) Here, revealing the identity of the electronic device and its application would allow criminal types to evade the technique. Subjects of criminal investigations could utilize knowledge of this device by changing their *modus operandi*. *Cf. Shores*, 185 F.Supp.2d at 84 (granting defendants' summary judgment motion regarding withheld numerical ratings which assessed the effectiveness of investigative techniques used during FBI investigations). This makes the FBI's criminal investigative function that much more difficult or, in some cases, impossible. General, non-specific knowledge that the FBI possesses capabilities to electronically monitor the movement of automobiles, for example, or other moving objects is not the same as identifying the actual device, its function, and its capabilities. Therefore, the Court finds that the FBI appropriately applied Exemption 7(E) in this matter.[9]

### 4. Unjustified Withholdings

Plaintiff points to specific documents–129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340–that the FBI did not justify within its *Vaughn* index. (Piper Decl. at 14–5.) Plaintiff brought these documents to defendants' attention and provided written directions of where to locate them because the file and serial numbers were not placed on the documents. (Piper Decl. at 14–5.) The FBI applied plaintiff's directions and discovered the documents were not in those locations. As such, the FBI concluded that "[t]hese documents could not be justified." (Keeley Decl. at 8, n. 5.) Instead of fully disclosing, the Government has chosen to withhold and simply not justify. This is not the way FOIA works.

■ An essential part of FOIA litigation is the *Vaughn* Index. The index's fundamental purpose is to enable the courts to ensure the government's exemptions are justified and enhance an opposing party's ability to argue effectively against nondisclosure. *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 972 (3rd Cir.1981). All a requester generally needs to prevail on a challenged exemption is to show that "the agency's *Vaughn* index

which exempts matters that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This is much ado about nothing. The fact that the FBI withheld this polygraph information under Exemption 2 and Exemption 7(D) does not invalidate either withholding. The District Court considered a similar issue and stated that dual exemption "merely reflected a thoughtful consideration of each document rather than a categorical withholding of all polygraph information under a single exemption." *Edmonds v. FBI*, 272 F.Supp.2d 35, 56 (D.D.C.2003).

9. The Court need not address the issue of whether the FBI is required to search its electronic surveillance index (ELSUR). The FBI has properly withheld the information germane to electronic monitoring that plaintiff sought. The matter is therefore settled.

does not justify withholding information under the exemptions invoked." *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C.Cir. 1992). Here, there is no justification put forth for the exemptions claimed with respect to these documents. Without justification, the Government has no standing to invoke exemptions. Similarly, the Court cannot ensure a meaningful assessment of the withholdings without justification. That the Government can no longer locate the file and serial numbers for justification purposes does not give it license to withhold information with the caveat that it could not track down the documents when challenged. Defendants' position is not bolstered by the fact that the file and serial numbers were not placed on the documents' face as a result of the FBI's own doing. (Piper Decl. at 14.) The Government's redactions without justification are unacceptable. If the Court granted its imprimatur to exemptions without any justification, the ripple effect would be to encourage government agencies to withhold information first and not find it later. This offends FOIA's strong presumption in favor of disclosure, *Burka v. Dep't of Health and Human Serv.*, 87 F.3d 508, 515 (D.C.Cir.1996) (citing to S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)), and does violence to FOIA's purpose of allowing citizens a right to find out "what the government is up to." *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773, 109 S.Ct. 1468. Therefore, the Court orders the aforementioned documents released to plaintiff in their entirety.[10]

## III. CONCLUSION

For the reasons stated above, the Court finds defendants are entitled to summary

judgment regarding the adequacy of the search. This Court also finds that the FBI has properly applied Exemptions 7(D) and (E) and grants its motion accordingly. The Court grants defendants' motion with respect to Exemption 7(C) except for the document marked 206. The Court orders that document released to plaintiff and also orders the release of the memorandum referenced in document 309. The Court grants plaintiff's motion with respect to documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340 and accordingly orders them released to plaintiff in their entirety. With regard to allegations of document destruction by the FBI, the Court declares this point moot for purposes of this action. A separate Order consistent with this opinion shall issue this day.

## ORDER

Upon consideration of defendants' motion for summary judgment, plaintiff's opposition and cross-motion for summary judgment, defendants' response, plaintiff's reply, and the entire record in this case and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that defendants' motion for summary judgment is **GRANTED** with respect to the adequacy of its search and its application of the enumerated FOIA Exemptions, except with respect to document 206, the memorandum referenced in document 309, and documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340.

**10.** While the bulk of these documents were withheld under Exemption 7(C), they do not fall within the Court's categorical ruling under that exemption because that ruling was based on the Government's ability to justify those withholdings. When there is a direct challenge to documents in a representative sample and the Government avers it cannot justify the withholding of those documents, this is all the law requires for requester to prevail. *See Schiller v. N.L.R.B.*, 964 F.2d 1205, 1209 (D.C.Cir.1992).

It is further **ORDERED** that the FBI release document 206, the memorandum referenced in document 309, and documents 129, 130, 131, 132, 172, 312, 321, 322, 323, 324, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 337, 339, and 340 in their entirety to plaintiff. With respect to these documents, plaintiff's cross-motion for summary judgment is **GRANTED**; in all other respects, plaintiff's cross-motion is **DENIED**.

It is further **ORDERED** that plaintiff's request to depose DOJ and FBI personal regarding destruction of documents is **DENIED**.

This case now stands dismissed with **PREJUDICE**.

**SO ORDERED.**